SHOWEN v. J. L. OWENS CO.

1. CORPORATIONS — SERVICE OF PROCESS ON FOREIGN CORPORATIONS—STATUTES—ACTIONS—ATTACHMENT.

The foreign corporations mentioned in 3 Comp. Laws, § 10442, on which service of process may be obtained by serving an officer or agent with a copy of the process, do not include such corporations as obtain the right to transact local business in the State of Michigan by appointing an agent for service of process, and securing a certificate of authority from the secretary of State, but include only foreign corporations engaged in interstate commerce in the State.

158 MICH.— 21.

2. SAME—ACTIONS—FOREIGN CORPORATIONS.

The effect of the statutes regulating the right of foreign corporations to engage in business of a local nature is to make them domestic corporations, entitled to, and subject to, the same remedies as corporations organized in Michigan.

3. SAME—ESTOPPEL—PROCESS—SERVICE.

A foreign corporation engaged in local business in the State without complying with the statutes is estopped to interpose the unlawful character of its business as a ground of invalidity of the service of process upon its local agent.

4. ATTACHMENT—FOREIGN CORPORATIONS—PROCESS.

Service of the writ of attachment upon defendant's resident agent conferred jurisdiction *in personam* under 3 Comp. Laws, §§ 10474, 10555, *et seq.*

5. SAME — AFFIDAVIT — DAMAGES RECOVERABLE AS AFFECTING JURISDICTION.

Where damages alleged in a declaration in attachment for a breach of contract are susceptible of definite ascertainment by testimony, within a standard established by the contract, the remedy by attachment is allowed.

6. SAME—ASSIGNMENT OF CLAIM—ACTIONS—PARTIES.

It is not a sufficient ground of objection to the jurisdiction in attachment that the plaintiff sues as assignee of a foreign corporation for the purpose of giving the courts of Michigan jurisdiction.

Certiorari to Kent; Perkins, J. Submitted April 24, 1909. (Docket No. 83.) Decided October 4, 1909.

Attachment proceedings by John L. Showen against the J. L. Owens Company. An order overruling a plea in abatement and denying a petition to dissolve the writ is reviewed by defendant on writ of certiorari. Affirmed.

*Sweet & Eastman*, for appellant.

*Clapperton & Owen*, for appellee.

BLAIR, C. J. On May 13 and December 26, 1904, the Arbuckle-Ryan Company, an Ohio corporation, and the J. L. Owens Company, a Minnesota corporation, executed written contracts at Toledo, Ohio, by the terms of which

the Ohio corporation agreed to purchase Owens bean and pea threshing machines, to be delivered f. o. b. cars Minneapolis, the Owens Company "to guarantee the machines to be free from inherent and mechanical defects." By the contract of May 13th the Ohio company is given the exclusive sale of the machines in certain counties in this State. By the agreement of December 26th the Ohio company was given the exclusive right of sale in the entire State of Michigan. On the 4th day of April, 1908, the plaintiff filed an affidavit for a writ of attachment in the circuit court for the county of Kent, stating:

"That the J. L. Owens Company, a foreign corporation, the defendant named in said writ, is justly indebted to deponent in the sum of $8,500, as near as may be, over and above all legal set-off, and that the same is now due and upon express contract.

"And this deponent further says that he has good reason to believe, and does believe, that the said defendant is a foreign corporation."

A writ of attachment was issued against defendant, by virtue of which the sheriff returned that he seized certain machines of defendant:

"I served on Benjamin F. Long in the city of Grand Rapids, in said county, who was represented to me to be the agent of the defendant in said attachment named, the J. L. Owens Company, residing in the said city of Grand Rapids and doing business for said defendant company within the State of Michigan, a copy thereof, together with a copy of the inventory of said property, duly certified, as I am commanded, by delivering the same to the said Benjamin F. Long, in the said city of Grand Rapids."

On the 18th day of April, 1908, the plaintiff, as assignee of the rights and interests of the Arbuckle-Ryan Company under its said contracts with defendant, filed his declaration claiming damages for breach of warranty of said contracts. The first count alleges, as to the machines purchased under the agreement of May 13th,—

"That the said machines at the time of the making of said promise and undertaking of the said defendant, and

at the time of the delivery of said machines, were not free from inherent and mechanical defects, but, on the contrary thereof, were inherently and mechanically defective, and were constructed from poor and rotten wood, and poor and defective castings and materials, and were unsuitable for the purposes for which they were intended.

"And the said plaintiff avers that the said the Arbuckle-Ryan Company, confiding in the said promise and undertaking of the defendant as aforesaid, had, through its salesmen and agents, sold and delivered said machines to its customers in, to wit, the State of Michigan, and elsewhere, extending credit to its said customers for the purchase price of the machines so sold to them; that for the reasons aforesaid the said machines became and were of no use or value to the said Arbuckle-Ryan Company, or to its said customers, and were rejected by its customers, and settlement therefor refused by its said customers, and it, the said the Arbuckle-Ryan Company, was put to great charges and expenses of its moneys in and about the repairing of said machines, and the returning of said machines for repair, with the necessary and incidental costs of freight, cartage, and of new materials, and the expense of making the necessary repairs on said machines; that said the Arbuckle-Ryan Company had sold said machines to its said customers at a large profit over and above the price at which it had purchased same from said defendant; that said the Arbuckle-Ryan Company, in order to induce its said customers to retain and keep said machines, and to dispose of said machines, was compelled to resell said machines after making said repairs at a reduced price, and thereby lost large gains and profits; that the loss and damage to the said the Arbuckle-Ryan Company, as aforesaid, in whole amounts to a large sum of money, to wit, the sum of $4,500."

The second count alleges as to the machines purchased under the agreement of December 26th:

"The said defendant undertook, and then and there faithfully promised the said the Arbuckle-Ryan Company, to deliver to said the Arbuckle-Ryan Company said machines within a short, reasonable time thereafter, and faithfully promised the said the Arbuckle-Ryan Company that said machines and equipment so sold were and would be free from inherent and mechanical defects, and suitable for the purposes for which they were intended; * * * that

the said machines at the time of the making of said promise and undertaking of said defendant, and at the time of the delivery of said machines, were not free from inherent and mechanical defects, but, on the contrary thereof, were inherently and mechanically defective, and were constructed from poor and rotten wood, and poor and defective castings and materials, and were unsuitable for the purposes for which they were intended. And the said plaintiff avers that, the said the Arbuckle-Ryan Company, confiding in the said promise and undertaking of the defendant as aforesaid, it, the said the Arbuckle-Ryan Company, had through its salesmen and agents sold and delivered said machines to its customers in, to wit, the State of Michigan and elsewhere, extending credit to its said customers, for the purchase price of the machines so sold to them; that for the reasons aforesaid the said machines became and were of no use or value to the said the Arbuckle-Ryan Company, or to its said customers, and were rejected by its said customers, and settlement therefor refused by its said customers, and it the said the Arbuckle-Ryan Company was put to great charges and expenses of its moneys in and about the repairing of said machines, and the returning of said machines for repair, with the necessary and incidental costs of freight, cartage, and of new materials, and the expense of making the necessary repairs on said machines, and other expenses; that the said the Arbuckle-Ryan Company had sold said machines to its said customers at a large profit to it over and above the price at which it had purchased same from said defendant; that said the Arbuckle-Ryan Company in order to induce its said customers to retain and keep said machines, and to dispose of said machines, was compelled to resell said machines after making said repairs at a reduced price, and thereby lost large gains and profits; that, on account of the delay and refusal of said defendant to ship said machines as it had promised, it, the said the Arbuckle-Ryan Company, lost divers sales and the gains and profits which it would have made thereon; that the loss and damage to the said the Arbuckle-Ryan Company, as aforesaid, in whole amounts to a large sum of money, to wit, the sum of $4,500."

The third count covers purchases under both agreements, and contains, among other allegations, the following:

"The said defendant undertook, and then and there faithfully promised the said the Arbuckle-Ryan Company, to furnish all the necessary new material to fix up and repair said defective and broken machines, and to send men to each place where said machines had been sold and were located to thoroughly repair said machines, so that they would be satisfactory to the customers to whom they had been sold by the said the Arbuckle-Ryan Company, and then and there faithfully promised the said the Arbuckle-Ryan Company to deliver to said the Arbuckle-Ryan Company said machines within a short, reasonable time thereafter, and faithfully promised the said plaintiff that said machines then and there ordered and purchased and their equipment were and would be free from inherent and mechanical defects, and suitable for the purposes for which they were intended; * * * that nevertheless the said defendant, contriving and fraudulently intending to injure the said the Arbuckle-Ryan Company did not perform its said promises and undertakings by it so made as aforesaid, and did not deliver said machines within a short, reasonable time as it had promised, and did not furnish all the necessary new materials to fix up and repair said defective machines, and did not send men to repair said beaners, or repair them to the satisfaction of said customers, but neglected and refused to keep its said promise in this regard, and thereby craftily and subtly deceived and defrauded the said the Arbuckle-Ryan Company, in this, to wit: That the said machines which were delivered after the time of the making of the said promises aforesaid, at said time and at the time of the delivery of said machines, were not free from inherent and mechanical defects, but, on the contrary thereof, were inherently and mechanically defective, and were constructed from poor and rotten wood, and poor and defective castings and materials, and were unsuitable for the purposes for which they were intended. And the said plaintiff avers that the said the Arbuckle-Ryan Company, confiding in the said promise and undertaking of the defendant as aforesaid, had through its salesmen and agents sold and delivered to its customers in, to wit, the State of Michigan and elsewhere, extending credit to its said customers for the purchase price of said machines so sold to them; that, for the reasons aforesaid, the said machines became and were of no use or value to the said the Arbuckle-Ryan Company, or to its said customers, and were

rejected by its said customers, and settlement therefor refused by its said customers, and it, the said the Arbuckle-Ryan Company, was put to great charges and expenses of its moneys in and about the repairing of said machines, and the returning of said machines for repair, with the necessaries and incidental costs of freight, cartage and of new material, and the expense of making the necessary repairs on said machines and other expense; that the said the Arbuckle-Ryan Company had sold said machines to its said customers at a large profit to it over and above the price at which it had purchased same from the said defendant; that the said the Arbuckle-Ryan Company, in order to induce its said customers to retain and keep said machines, and to dispose of said machines, was compelled to resell said machines, after making said repairs, at a reduced price, and thereby lost large gains and profits; that, on account of the delay and refusal of said defendant to ship said machines as it had promised, the said the Arbuckle-Ryan Company lost divers sales, and the gains and profits which it would have made thereon, and, on account of the depreciated value and the worthlessness of said machines, said the Arbuckle-Ryan Company suffered the loss of large sums of money which it paid the said defendant in the purchase of said machines; that the loss and damage to the said the Arbuckle-Ryan Company, as aforesaid, in whole amounted to a large sum of money, to wit, the sum of $9,000."

On the 26th day of May, 1908, defendant filed a plea in abatement, setting forth, in substance, that the cause of action set forth in plaintiff's declaration did not accrue within the State of Michigan, but in the State of Minnesota or Ohio, and that, therefore, the circuit court for the county of Kent had no jurisdiction over said cause of action. On the 15th day of May, 1908, the defendant filed a petition in said circuit court asking for a dissolution of the writ of attachment, denying that there was any indebtedness whatever existing between the defendant and the said Arbuckle-Ryan Company or its assignee, the said John L. Showen, and that the sole and only rights of the said John L. Showen are such as he may have by reason of his assignment of the interest and title of the said

Arbuckle-Ryan Company in the aforementioned contracts, and that the nature of the indebtedness, if any, due from the defendant to the said Arbuckle-Ryan Company or its assignee is wholly and entirely speculative, unliquidated, and indefinite in its character and amount, and is not capable of being made certain or definite, and is not such a claim of indebtedness as is contemplated by the statute in attachment proceedings.

In answer to the plea in abatement, plaintiff filed his own affidavit, stating, among other things, as follows:

"Affiant further says that he is acquainted with Benjamin F. Long, the party referred to in the third paragraph of said plea, and has been acquainted with him for some years, and knows the business in which he has been engaged; that at the time said suit was commenced, and for some time theretofore, the said Benjamin F. Long resided with his family in the city of Grand Rapids, in said county, and was at that time and for some months at least before the commencement of said suit engaged as the agent or representative of the J. L. Owens Company of Minneapolis, Minn., in the sale of its bean threshers, and the handling of its business in the State of Michigan; that he knows from his association with and observation of the business done by said Long, affiant being engaged in a similar line of business as agent and representative, that the business of the said Long as agent and representative of the J. L. Owens Company as aforesaid in the State of Michigan was to make sales and take orders for bean threshers sold by the said J. L. Owens Company in the usual manner and upon the usual terms and custom in relation to such business, and that it was also a part of the business of the said Long as the agent and representative, as aforesaid, to negotiate and make contracts with local agents in towns in the State of Michigan on behalf of the said J. L. Owens Company for the sale of bean threshers in local territories, and in a general way to look after the business of said J. L. Owens Company as such agent and representative, in accordance with the general custom of such agents."

The issue raised by the plea in abatement and the petition to dissolve the attachment were submitted to the court, and the court dismissed the petition and overruled

the plea.   On defendant's application, a writ of certiorari was issued out of this court, and the record is before us for review.   The return of the circuit judge in part is as follows:

" I further show and return to said writ that at the time of the hearing and argument upon the plea to the jurisdiction in said cause, and upon the petition for the dissolution of the writ of attachment in said cause, it appeared from the pleadings and affidavits, all of which are attached hereto, and I found therefrom as a matter of fact that at the time of the commencement of said suit and the service of the writ of attachment therein the said defendant company had goods and property in said county and State for sale in the regular course of its business; that one Benjamin F. Long, upon whom the said writ was personally served, as shown by the return thereto, was a resident of the city of Grand Rapids, in said county, and was acting generally as the agent and representative of the said defendant company in the sale of its goods and the handling of its business in said county and State, and that at the time of the service of said writ the said defendant company was, and for a considerable period of time had been, through its said agent and otherwise, doing business generally with the citizens of said county and State in the sale of its products, and had merchandise and property, consisting of bean threshers manufactured by it, in said county and State, for the purpose of carrying on its said business therein.

" I thereupon held that the court by the service of said writ acquired and had jurisdiction in said cause, as shown by the orders duly made and filed therein."

Two principal questions are presented for our consideration by the briefs of counsel:

*First.* Did the court acquire jurisdiction over the defendant, a foreign corporation, the cause of action having accrued outside of the State?

*Second.* Is the amount of the indebtedness or damages as stated in the declaration so uncertain, speculative, and conjectural as to exclude the remedy by attachment?

*First.* Since there was no method for suing a corporation at common law outside of its home jurisdiction, it is argued that the right to maintain the present action must

depend upon statutory authority. Defendant contends that such authority can be found only in section 10442, 3 Comp. Laws, which provides as follows:

"(10442) SECTION 1. *The People of the State of Michigan enact,* That suits may be commenced at law or in equity in the circuit court for any county of this State where the plaintiff resides or service of process may be had and suits at law, before justices of the peace in such county; and in cases where the plaintiff is a nonresident in any county of the State, against any corporation not organized under the laws of this State in all cases where the cause of action accrues within the State of Michigan, by service of a summons, declaration or chancery subpœna within the State of Michigan, upon any officer or agent of the corporation, or upon the conductor of any railroad train, or upon the master of any vessel belonging to or in the service of the corporation against which the cause of action has accrued: *Provided,* That in all cases, except before justices of the peace, no judgment shall be rendered for sixty days after the commencement of suit, and the plaintiff shall, within thirty days after commencement of suit, send notice by registered letter to the corporation defendant at its home office."

Counsel for plaintiff argue that section 10442, 3 Comp. Laws, should be construed as applying only to foreign corporations engaged in interstate commerce transactions within the State, and not to foreign corporations doing business in the State through resident agents and really domiciled in a business sense within the State. It is further contended that the provisions of section 10468, 3 Comp. Laws, are applicable to foreign corporations actually doing business in this State as well as to domestic corporations. Defendant insists that this latter contention is disposed of by our previous decisions: *Grand Trunk R. Co.* v. *Wayne Circuit Judge,* 106 Mich. 248 (64 N. W. 17), and cases cited therein. We do not regard these decisions, however, as necessarily disposing of the question under consideration. In *People* v. *Hawkins,* 106 Mich. 479 (64 N. W. 736), decided soon after the decision in *Grand Trunk R. Co.* v. *Wayne Circuit Judge,*

*supra,* it was held that the section of the act relating to the incorporation of manufacturing and mercantile associations, which provided that foreign corporations organized for any of the purposes of the act, upon recording their articles of association and appointing a resident agent for service of process, might carry on business in this State and enjoy all the rights and privileges and be subject to all the restrictions and liabilities of corporations existing under said act, did not prohibit foreign corporations from doing business in this State until they had complied with such conditions or invalidate their contracts. As said by Justice Gray in *Barrow Steamship Co.* v. *Kane,* 170 U. S. 100 (18 Sup. Ct. 526):

"The constant tendency of judicial decisions in modern times has been in the direction of putting corporations upon the same footing as natural persons in regard to the jurisdiction of suits by or against them."

See, also, *Reeves* v. *Railway Co.,* 121 Ga. 561 (49 S. E. 674, 70 L. R. A. 513). We think this tendency is reflected in our statutes upon this subject enacted since the decision in 106 Mich. 248 (64 N. W. 17).

By Act No. 206, Pub. Acts 1901, the terms and conditions on which foreign corporations might be admitted to do business in Michigan were prescribed, and, among other things, they were required to appoint an agent in this State to accept service of process, and failure to comply with the provisions of the act subjected the offending corporation to heavy penalties. Upon compliance with the provisions of the act, the corporation was authorized to carry on its business for the time set forth in its charter or articles of association, unless longer than contemplated by the laws of this State. This act (section 1) was amended in 1903 (Act No. 34, Pub. Acts 1903) and at the regular and special sessions of 1907 (Act No. 310, Pub. Acts 1907; Act No. 3, Ex. Sess. 1907). By the amendatory act passed at the regular session of 1907, it was made unlawful for any foreign corporation to transact its business in this State—

"Until it shall have procured from the secretary of State of this State a certificate of authority for that purpose."

Among other things necessary to the procurement of such certificate, it must file evidence of the appointment of an agent in this State to accept service of process on behalf of the corporation. The certificate of authority authorizes the corporation to carry on its business in this State for the period of its corporate existence, but not to exceed 30 years.

"And the secretary of State shall in the certificate which he issues state under what act such corporation is to carry on business in this State and such corporation shall have all the powers, rights, and privileges, and be subject to all the restrictions, requirements, and duties granted to or imposed upon corporations organized under such act."

By section 6 a failure to comply with the act invalidates all contracts. By section 7 it is made unlawful for any person to act as agent for an unauthorized company and any person violating this provision is made guilty of a misdemeanor. By section 5 of the amendatory act passed at the special session of 1907 failure to comply with the provisions of the act subjects the corporation to a penalty of not less than $100 nor more than $1,000 per month. Section 10 reads as follows:

"SEC. 10. No such corporation having appointed an agent to accept service of process shall have power to revoke or annul such appointment until it shall have filled (filed) notice of appointment of some other person in this State as such agent. *Service of process may also be made upon any officer or agent of such corporation in this State,* or service may be made upon the secretary of State, who shall immediately notify the corporation thus served, by mailing notice thereof and a copy of such process to its address. There shall be paid to the secretary of State at the time of such service a fee of five dollars, which sum may be taxed as costs to the plaintiff in case he prevails in the proceeding."

Section 13, Act No. 232, Pub. Acts 1903, being the act

to revise and consolidate the laws providing for the incorporation of manufacturing and mercantile companies, etc., reads as follows:

"SEC. 13. Every corporation organized or existing under this act shall have power to have succession by its corporate name for the period limited in its charter, or by this act; to sue and be sued in any court of law or equity, with the same rights and obligations as a natural person; to make and use a common seal and alter the same at pleasure; to ordain and establish by-laws for the government and regulations of its affairs, and to alter and repeal the same; to elect all necessary officers and to appoint and employ such agents as the business may require."

The effect of the statutes regulating the transaction of local business in this State by foreign corporations is to make such corporations, as to such business, domestic corporations organized under the act specified in the certificate of the secretary of State entitled to and subject to the same remedies as such corporations in the courts of this State. We are of the opinion, therefore, that section 10442, 3 Comp. Laws, should be limited in its application to foreign corporations transacting interstate commerce business in this State. *Barrow Steamship Co.* v. *Kane, supra.* The court found, and the evidence warranted the finding, that the defendant through its agent was transacting local business in the State, and the fact that such business upon the showing made was unlawful should not relieve the defendant, but it should be held to assent to the same remedies which would have attached if it had done the business lawfully. It is estopped to set up in its defense the unlawfulness of its transactions. *Ehrman* v. *Insurance Co.,* 1 Fed. 471; *Hagerman* v. *Empire Slate Co.,* 97 Pa. 534; *Sparks* v. *Accident Ass'n,* 100 Iowa, 458 (69 N. W. 678); *La Fayette Ins. Co.* v. *French,* 18 How. (U. S.) 404. Under our attachment statutes, also, service of the writ upon defendant's resident agent conferred jurisdiction *in personam.* 3 Comp. Laws, §§ 10474, 10555, 10556, 10559, 10560, 10571,

10576; *St. Clair* v. *Cox*, 106 U. S. 350 (1 Sup. Ct. 354);
*Davidson* v. *Fox*, 120 Mich. 386 (79 N. W. 1106).

*Second.* It was said in *Roelofson* v. *Hatch*, 3 Mich.
277:

" There may be cases of contracts not within this remedy, as for example a breach of promise to marry, where the damages rest so entirely in opinion that it would be a solecism to say the amount of indebtedness could be sworn to. But, again, there are many contracts where, although the damages are not liquidated in the contract, yet by well-established rules of law they are capable of being ascertained definitely upon proof of the facts, and to hold that in all this class of cases the plaintiff is debarred of this remedy would be to defeat in a great measure the purposes sought to be secured by its enactment. The plaintiff is required to swear that the defendant is indebted to him upon contract, express or implied, and to state the amount of such indebtedness, as near as may be, over and above all set-offs. What is an indebtedness? It is the owing of a sum of money upon a contract or agreement, and, in the common understanding of mankind, it is not less an indebtedness that such sum is uncertain. The result of a contrary doctrine would be to hold any liability which could only be the subject of a general *indebitatus assumpsit, quantum meruit,* or *quantum valebant* count in a declaration, such an indebtedness as could not be the subject of this remedy by attachment. Without fully deciding this point, which is not necessarily raised in this case, we see no reason why a demand arising *ex contractu,* the amount of which is susceptible of ascertainment by some standard referable to the contract itself, sufficiently certain to enable the plaintiff, by affidavit, to aver it ' as near as may be,' or a jury to find it, may not be a foundation of a proceeding by attachment. See *Fisher* v. *Consequa,* 2 Wash. C. C. 382 (Fed. Cas. No. 4,816); *Clark's Ex'rs* v. *Wilson,* 3 Wash. C. C. 560 (Fed. Cas. No. 2,841)."

We are unable to find that this question has since been presented to this court. We hold, however, that the views of the court stated *arguendo* in the *Roelofson Case* correctly state the law, and justify the ruling of the circuit court. The amount of the damages in this case,

while unliquidated, is susceptible of ascertainment by a standard referable to the contract. The standard established by the contract was that specified machines sold for a specified price should be free from inherent and mechanical defects. The declaration alleges that the machines were not free from, but possessed, such defects, that they were sold at a profit, but on account of the defects were returned, were repaired, and resold at a reduced price. While some of the damages claimed in the declaration were probably too indefinite and speculative to admit of the remedy by attachment, in the main, the damages claimed were susceptible of definite ascertainment by testimony. *Baumgardner* v. *Manufacturing Co.*, 50 Minn. 381 (52 N. W. 964); *Lawton* v. *Kiel*, 51 Barb. (N. Y.) 30; *Weaver* v. *Puryear*, 11 Ala. 941; *New Haven Steam Saw-Mill Co.* v. *Fowler*, 28 Conn. 103; *Hyman* v. *Newell*, 7 Colo. App. 78 (42 Pac. 1016).

We are also of the opinion that, under the showing made in this case, the plaintiff was entitled to maintain his suit as assignee. *McBride* v. *Farmers' Bank*, 26 N. Y. 450; *Hadden* v. *Dooley*, 92 Fed. 274 (34 C. C. A. 338); *Felt* v. *Evaporating Co.*, 52 Mich. 602 (18 N. W. 378); *Henderson* v. *Railway Co.*, 131 Mich. 438 (91 N. W. 630).

The orders of the circuit court are affirmed, and the writ dismissed, with costs to plaintiff.

MONTGOMERY, OSTRANDER, HOOKER, and BROOKE, JJ., concurred.