## HUNTER–WILSON DISTILLING CO., Inc. v. FOUST DISTILLING CO.

### No. 10035.

United States Court of Appeals
Third Circuit

Argued Jan. 19, 1950.

Filed April 21, 1950.

Douglass D. Storey, Harrisburg, Pa. (Herbert Levy, Baltimore, Md., Storey & Bailey, Harrisburg, Pa., on the brief), for appellant.

William Hoffenberg, Baltimore, Md. (Mark T. Milnor, Harrisburg, Pa., on the brief), for appellee.

Before McLAUGHLIN, KALODNER and HASTIE, Circuit Judges.

McLAUGHLIN, Circuit Judge.

Appellant's contract action, tried to the Court alone, resulted in favor of the de-

fendant-appellee on the main issue involved, and on the counterclaim. It is these two items with which we are concerned in this appeal. The facts, as justifiably found by the District Judge, are that, in March 1940, appellee sold to Wilson Company 2535 barrels of rye whiskey then on storage in its warehouse. Proper warehouse receipts were issued. As part of the transaction, appellee gave Wilson Company an admitted warranty covering excess outage.[1] This reads: "We also wish to advise that we will guarantee any excess outage on the above lot in accordance with the statutory allowance given by the Government. It is further understood, that when the allowance is to be allowed, it will be determined on a regauge basis as of the time taxpayments or shipments are made, which will be made at Foust Distilling Co., Inc., Glen Rock, Pa."

In December 1940, Wilson Company sold and assigned to appellant all its assets except shares of its stock and that of others. No notice was given appellee of the change in ownership of the whiskey in question. The warehouse receipts for it were apparently endorsed in blank by the president of Wilson Company. Though they contained no reference to the warranty, and though there was no specific reference to the warranty in the agreement of sale of the Wilson assets, nevertheless it clearly appears that the warranty was included in the assignment of assets. On October 29, 1942, while the whiskey was still in appellee's warehouse, 25 of the barrels were regauged. They showed an excess outage of 438.3 gallons. Appellant thereafter sued appellee for breach of the warranty. The action was in the District Court because of diversity of citizenship.

Appellant urges that the warranty here, dealing as it does with quantity alone, and with the original seller retaining possession of the whiskey, is enforceable by a subpurchaser to whom the warranty has been assigned by the first purchaser. The whiskey seems to have been contracted for in Pennsylvania and the law of that state would govern the substantive rights of the parties. Newspaper Readers Service v. Cannonsburg Pottery Co., 3 Cir., 146 F.2d 963, 965. Unfortunately Pennsylvania has no reported law on the precise point at issue. However, that state does show indications that the old sacrosanct common law doctrine of privity between the original seller and the subpurchaser would not be followed under the particular facts of the present situation. Cf. Mannsz v. Macwhyte Co., 3 Cir., 155 F.2d 445, 449, 450. In line with this is the comment of the then Judge Cardozo for the New York Court of Appeals, "The assault upon the citadel of privity is proceeding in these days apace."[2] Writers of law review articles and notes have long championed the broadening of liability of warranty. 19 No. Carolina L. Rev. 551; 15 N.Y.U. L. Quarterly Rev. 292; 9 N.Y.U. L. Quarterly Rev. 360; 37 Col.L.Rev. 77; 33 Col.L. Rev. 868; 29 Mich.L.Rev. 906. And see, Coolidge v. Burnes, 25 Ark. 241; Ranney v. Meisenheimer, 61 Mo.App. 434; Showen v. J. L. Owen Co., 158 Mich. 321, 121 N.W. 640, 133 Am.St.Rep. 376; Walrus Mfg. Co. v. McMehen, 39 Okl. 667, 136 P. 772, 51 L.R.A.,N.S., 1111.

Professor Williston says that there seems to be no reason why a warranty sounding in contract should not be assignable as a right in contract. His restriction of that thought, as he states it, would seem to be confined to warranties of title and quality, not to quantity.[3]

Strong support is given the assignability of the warranty in the instance before us

---

1. Outage is loss of content from seepage, evaporation or whatever the cause. Excess outage is all outage beyond that allowed by the Government for tax computation purposes.

2. Ultramares Corporation v. Touche, 255 N.Y. 170, 180; 174 N.E. 441, 445, 74 A.L.R. 1139. This language is quoted by

Judge Murphy in his exhaustive opinion below.

3. Williston on Contracts Rev.Ed. Vol. Four, Section 998: "It is a general rule that one who has a right in contract may assign that right in effect by giving the assignee the power to enforce it in the name and stead of the assignor.

by Restatement: Contracts, Section 151 which reads:

"A right may be the subject of effective assignment unless,

"(a) the substitution of a right of the assignee for the right of the assignor would vary materially the duty of the obligor, or increase materially the burden or risk imposed upon him by his contract, or impair materially his chance of obtaining return performance, or

"(b) the assignment is forbidden by statute or by the policy of the common law, or

"(c) the assignment is prohibited by the contract creating the right."

■ The assignment is not forbidden by statute. Pennsylvania decisions do not touch the point at bar nor have we seen any English opinion covering the present facts. Therefore, we are not concerned with (b) or (c) of the above, and, under the instant facts, (a) does not apply because enforcement of the warranty in favor of the appellant does not vary materially the distiller-warehouseman's duty or increase materially the burden or risk imposed upon Foust by the sales and warehouse contracts or impair materially Foust's chance of obtaining return performance. Having in mind that both custody and possession of the whiskey were in the seller-distiller-warehouseman during the whole period of the warranty, it is obvious that the assignment of the warranty to appellant has not increased appellee's responsibility or liability arising out of it. Appellee said in effect that it would be responsible for excessive outage while the whiskey remained in its possession and under its control. Enforcement of that engagement is all that is asked. The cry of no privity cannot be fairly raised to avoid appellee's commitment. No case was cited below or before us holding that a quantity warranty in the instant circumstances is unassignable. Decisions cited by appellee are not in any real conflict with our construction of the warranty in this matter. It would serve no purpose to set out a list of them. We think appellee assumed the duty of making good excess outage during its retention of the whiskey. If restriction of that responsibility to the original purchaser had been desired, it could have been so stated in the warranty. It is illogical to contend that Foust was making merely a personal promise to its vendee when the indicia of ownership of the spirits, the warehouse receipt, contained language showing that it might be assigned and that it was salable.

■ On the question of custom and usage in the whiskey trade, which called for the excess outage warranty to go with the barrel, the Court below found, from the testimony, " * * * there was no such custom." The record contains evidence to support that finding.

Appellant suggests that the transfer of assets from the first purchaser to it was not a sale but merger. The point is disposed of by the finding of the Court below that, "So far as the testimony showed, Old Wilson continued its corporate existence after the sale to New Wilson".

■ In its counterclaim, appellee asks for unpaid storage charges for the whiskey. It asserts that its delay in delivering

There seems no reason why a warranty should be an exception to this rule; and, therefore, a right of action of the first buyer should be assignable to a subpurchaser. But however this may be, it seems settled that the mere resale of a warranted article, whether the warranty is express or implied, does not give the subpurchaser a right to sue the original seller for damages caused him by defects either in the title or quality of the goods. Two reasons may be given for this result. In the first place, the sale of the chattel does not indicate that the seller means to part with his right of action for damages against one who previously sold the article to him. On the contrary, it may be assumed, that if the original warranty has been broken, the original purchaser means to retain whatever right he may have. Another reason is that a warranty must, it seems, like an insurance policy, be interpreted as a contract of personal indemnity. Therefore, though one who purchased goods with a warranty might assign a right of action already accrued on the warranty, he could not enlarge its scope so as to make it include the indemnification of subpurchasers."

the whiskey to appellant, after request by the latter, was due to labor difficulty and inability to obtain railroad transportation. Appellant abandoned the count in its complaint asking for damages for the delay. The Court below found for appellee on the counterclaim because "There was an agreement between the parties that storage should be paid on all whiskey for the time it was actually in the defendant's storehouse." We cannot say that the Court's conclusion was clearly erroneous under the facts, having in mind that the District Judge had the opportunity of passing upon the credibility of the witnesses.

▋ In the present situation, our decision that the warranty was assignable gives appellant the right to recover on the fifth count of the complaint. All that remains is the assessment of damages. It follows that the judgment on the fifth count should be reversed and that the case should be remanded for assessment of damages on that count unless Rule 50(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A., prohibits such course. That rule has to do with jury trials and with the necessity of presenting a motion for judgment "* * within 10 days after the jury has been discharged, * * *" following the denial of "* * * a motion for a directed verdict made at the close of all the evidence * * *." The rule has no application here. As Judge Sibley said in Morris v. Prefabrication Engineering Co., 5 Cir., 160 F.2d 779, 782, "We do not regard these motions, under the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, as being necessary or even proper where there is not a jury trial, * * *." Therefore, the judgment of the District Court will be reversed with respect to the fifth count of the complaint and the case will be remanded for the purpose of assessing appellant's damages on that count. The judgment in favor of the appellee on its set off and counterclaim will be affirmed.

No costs in favor of either party as against the other.

KALODNER, Circuit Judge (dissenting).

The area of disagreement between the majority and myself is confined to the questions (1) whether the guarantee against excess outage is binding upon the defendant, and (2) assuming that it is, whether a judgment should be directed in favor of the plaintiff in this Court.

I do not dispute that the law of warranties pertinent to this case is in the process of renovation. However far Pennsylvania will go, I think the learned trial judge has adequately presented the opposite view to that expressed by the majority, and I agree with him. But on the record, the solution of this case need not rest upon a choice of the two approaches. Thus, it is an equally justifiable conclusion that the rights of the parties to this litigation are governed by the declaration of the warehouse receipts, that the defendant would not be responsible for loss or damage resulting from specified causes "or any other cause beyond our control". And if the plaintiff has a right of action, it must be founded on the warehouseman's liability as such.

It should be noted that the District Court rejected, as does this Court, the contention of the plaintiff that the transaction involved here was other than a sale in the usual sense. But there was no finding by the District Court that the defendant's letter to the original purchaser containing, *inter alia,* the guarantee, was intended to cancel the contrary clause in the warehouse receipts if they were transferred. Nor, indeed, was there a finding below that the general assignment referred to by the majority was intended to include the guarantee. Although the majority has made factual findings on these issues, the District Judge may well have come to another conclusion, taking into consideration all the circumstances of the case.[1] Since this Court is not usual-

---

[1.] Parenthetically, it should be stated that throughout it has been made to appear that the original purchaser from the defendant was "Old Wilson", a Maryland corporation. However, the documents in evidence show that the president of "Old Wilson" was one Levin, who signed the "assignment" which was, in effect, an agreement with Distillers Corporation-Seagram's Ltd., to sell to "New Wilson",

ly a fact-finding tribunal, it would seem proper, on the majority's view, to remand the case for further findings, and if need be, additional evidence.

Finally, I believe the majority's direction, in effect, of judgment for the plaintiff to be inappropriate at this time. The reasons given by the Supreme Court in two recent cases[2] for preventing the Court of Appeals from directing judgment when no motion under Rule 50(b) had been presented to the lower court are persuasive that under the circumstances of this case the trial court should have the initial determination with respect to making appropriate findings on the relevant factual issues, and amending the judgment, as he could have done under Rule 52(b).

For the reasons stated, I would affirm the judgment of the District Court.

a Seagram subsidiary and forerunner of plaintiff. But "Old Wilson" had a subsidiary called in these proceedings, "Wilson of New York". While there is testimony that this corporation had no assets, one Newman endorsed the warehouse receipts in the capacity of a president, and a protective assignment obtained from "Wilson of New York", was

signed by Newman as its president. It would seem, therefore, that the whiskey involved belonged to "Wilson of New York".

2. Cone v. West Virginia Pulp & Paper Co., 1947, 330 U.S. 212, 67 S.Ct. 752, 91 L.Ed. 849; Globe Liquor Co., Inc., v. San Roman, 1948, 332 U.S. 571, 68 S.Ct. 246, 92 L.Ed. 177.