Garnett B. **FORTNER**, Appellant,

v.

**R. P. BALKCOM, Jr.,** Warden, Georgia State Prison, Appellee.

No. 23537.

United States Court of Appeals
Fifth Circuit.

July 7, 1967.

---

James R. Paulk, Jr., G. Kimbrough Taylor, Jr., Atlanta, Ga., for appellant.

Joel M. Feldman, Hardaway Young, III, Asst. Attys. Gen., Arthur K. Bolton, Atty. Gen., Atlanta, Ga., for appellee.

Before BROWN, GOLDBERG and AINSWORTH, Circuit Judges.

GOLDBERG, Circuit Judge:

This is an appeal in forma pauperis from a denial of a writ of habeas corpus by the District Court for the Southern District of Georgia. We reverse and remand for a meaningful hearing on the petitioner's allegations.

We are mindful of Judge Gewin's admonition that "once fairly tried and convicted, prisoners should not be allowed to crowd the courts with continuous, repetitious and frivolous hearings to the extent that such proceedings become the chief business of the Judiciary." Allison v. Holman, 5 Cir. 1963, 326 F.2d 294, 298. But the ancient and hallowed writ calls for more than the perfunctory hat-tipping in its direction which was done here.

On April 27, 1961, the petitioner Fortner was convicted by a jury in Fannin County, Georgia, of murdering his son-in-law, John Dilly Mabe. Fortner was sentenced to life imprisonment. He sought by habeas corpus in state court to avoid the sentence, but Georgia then did not have a post-conviction remedy,[1] and the application was denied. After thus exhausting the remedies available in the Georgia courts (as required by 28 U.S.C.A. § 2254),[2] Fortner applied for a writ of habeas corpus in district court. He applied in forma pauperis, and counsel was appointed to represent him. He alleged that his constitutional rights were violated by the denial of compulsory process to obtain favorable witnesses and by ineffective assistance of counsel. To buttress these allegations, Fortner attached a copy of an affidavit by his ex-wife, who was his lawful wife at the time of trial, which states that she and not Fortner shot Mabe in order to save her husband's life as Mabe was approaching her husband's bedroom with an open knife in his hand. Three additional affidavits were attached to the petition. One, by R. B. Self, states that he was an eyewitness and saw Mrs. Fortner shoot Mabe. One, by Truman Greene, states that Mrs. Fortner told Greene that she shot Mabe and that she was subpoenaed but was not permitted to testify before the grand jury. The third,

by Fortner's daughter, Mabe's widow, states that she was intimidated by Mabe's family and friends into committing perjury at Fortner's trial.

On May 10, 1965, the State of Georgia filed a notice to take the deposition upon written interrogatories of Green A. Jones, Fortner's attorney in the state court trial. The deposition was taken the next day, on May 11, 1965. Although James E. McAleer, Jr., had been appointed to represent Fortner on March 25, 1965, and was therefore the proper person upon whom service should have been made pursuant to Rule 5(b) of the Federal Rules of Civil Procedure,[3] the notice of deposition and the attached interrogatories were addressed to Fortner himself, who was at the time incarcerated at the Georgia State Prison in Reidsville, Georgia.

At the hearing below, the only witness was Fortner, who testified that his wife had told his trial counsel that it was she who committed the crime, that all of the persons whose affidavits were attached to the petition were available at the trial, that they could have testified in his behalf, and that his trial counsel was so informed. The only excuse Fortner said his attorney gave for not allowing the wife to testify was that he "was not going to use any witnesses."[4]

---

1. Georgia has since enacted the "Habeas Corpus Act of 1967" approved by the Governor April 20, 1967, which sets out the procedures for post-conviction remedy in line with similar statutes in other states. Ga. Senate Bill 171. See McGarrah v. Dutton, 5 Cir. 1967, 381 F.2d 161, a case similar to the present in which the effect of this new state remedy is discussed, and to which there is appended a copy of the statute.

2. In its brief, the State of Georgia contended that Fortner had not exhausted his Georgia remedies, but abandoned this contention during oral argument.

3. Rule 5(b) Fed.R.Civ.P. provides: "Whenever under these rules service is required or permitted to be made upon a party represented by an attorney the

service shall be made upon the attorney unless service upon the party himself is ordered by the court." No such order was entered by the court below.

4. All of Fortner's testimony is here set out:
BY MR. McALEER:
Q. You are Mr. Fortner, is that right?
A. Yes, sir.
Q. And you are serving time in the Reidsville State Penitentiary for murder?
A. Yes, sir.
Q. And you have brought this habeas corpus?
A. Yes, sir.
Q. Now, these affidavits that you have attached, was your wife available at the time of the original trial?
A. Yes, sir.

The State of Georgia then introduced the answers to the interrogatories propounded to Mr. Green A. Jones. In brief, Mr. Jones's answers stated that he had been practicing law for more than forty years, and that "there was no de-

Q. Did she inform your counsel of the facts as you have stated in here?

A. Yes, sir. She told him that she was the one that done it, that they were trying the wrong person in court.

Q. And did counsel give any reason for not letting her testify?

A. Well, he told the Judge that he was not going to use any witnesses.

Q. He wasn't going to use any witnesses at all?

A. No, sir.

Q. Now, what about these other witnesses that you informed counsel about, your daughter-in-law, did she testify?

A. It was my daughter.

Q. Your daughter?

A. Yes, sir.

Q. Did she testify?

A. She did in the first trial, yes, sir.

Q. She did testify?

A. Yes, sir.

Q. What about this Truman Green that is in Reidsville?

A. Well, he was with her at the time she tried to get in the grand jury room to state to the grand jury that she was the one that done the shooting instead of me and they wouldn't let her in, they told her that they didn't need her.

Q. She attempted to inform the grand jury?

A. She tried to get in, yes, sir.

Q. Who was it that wouldn't let her into the grand jury room?

A. I don't know. They said it was the Foreman and I don't know who he was.

Q. Now, you did hire this counsel that represented you in the initial case though?

A. Yes, sir.

Q. How many lawyers did you have there?

A. I had two.

Q. Did you hire both of them?

A. Yes, sir.

THE COURT: Does that set forth a case, legally, Mr. Attorney General?

MR. SETLIFF: I wouldn't contend that it sets forth a case legally.

THE COURT: All right.

MR. McALEER: Judge, that is the basis of his petition and I have to proceed on what he has got.

THE COURT: That's all right. I am not trying to tell you all how to run your case.

Q. Now, do you have anything else that you want to bring up on this hearing?

A. When the judge sentenced me on this, why, my lawyers were not present, and he asked me if there was anything I wanted to say and I said that I didn't know what to say, that I had a couple of lawyers, and he got the sheriff to call for them and they didn't answer him, and he also sent the sheriff out on the front and called for them and they didn't answer, and so he came back in and told him and said: "I can't find either one of them," and the Judge said: "Well, I have got a long ways to go, I will just have to sentence you and be on my way." It was Judge Albert Henderson from Marietta.

THE COURT: How many years have you served?

THE WITNESS: Five, sir, almost.

Q. Is that all you want to say?

A. Yes, sir.

MR. McALEER: The witness is with you.

— — CROSS EXAMINATION — —
BY MR. SETLIFF:

Q. Mr. Fortner, when you were convicted of murder, did the prosecution offer any witnesses against you?

A. Well, they had, I think, four or five. I mean there weren't any witnesses, I mean by that they didn't know anything. They were appointed some way, I don't know how.

In other words, the prosecution had proper witness and there was proper evidence against you for a finding of a verdict of guilty of murder against you?

A. Well, I don't think so.

Q. Was it a jury trial?

A. Yes, sir.

Q. In other words, a jury of your peers convicted you of murder, is that correct, sir?

A. That was what the jury stated.

Q. And you retained your own counsel, is that correct.

MR. SETLIFF: I have no further questions.

THE COURT: All right, you may go down.

MR. McALEER: That's all we have, Your Honor.

THE COURT: All right, you may proceed for the state.

MR. SETLIFF: I want to read the questions in this deposition of GREEN A. JONES, and let Mr. McAleer read the answers for me.

THE COURT: That's all right.

nial of any process to obtain witnesses for the defense of Fortner." With respect to Fortner's allegation that Mrs. Fortner, R. B. Self, Harriet Ann Fisher, and Truman Green could have testified to facts which would have materially affected the outcome of his trial, Jones's deposition stated that he "had no knowledge of any facts that would warrant any such allegation." Finally, in response to a question asking for any other facts or circumstances which would be pertinent for the court's consideration, Mr. Jones said:

> "Fortner is a man with a very limited education. He was a hard man to represent, *he didn't recognize the importance of the facts in his own case, he couldn't follow counsel's advice.* I was retained in this case not long after the alleged crime was committed. I acquainted myself with all the possible facts. *There were mean facts which I was never able to present to the jury because of circumstances beyond my control.* I feel that in justice to Fortner and humanity that he ought to be released. Personally, I never did believe that he was guilty." (Emphasis added).

In its findings of fact the trial court recited the indictment and conviction data of the case and then restated Fortner's allegations to be "among other things that he was denied compulsory process for obtaining witnesses; that his attorney was incompetent; that he was not allowed to have witnesses in his own defense and that these facts constitute a denial of due process of law." The court in its conclusions of law then held that "these matters are primarily criticisms of counsel's trial tacits [sic]" which are not grounds for setting aside a conviction, ruled that Fortner's attorney was competent, and denied the writ. This appeal followed.

We remand for a full hearing on the constitutional issues raised by Fortner's petition. Time and time again we direct ourselves to those profound and historical exegeses of the Great Writ in Townsend v. Sain, 1963, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770, and Fay v. Noia, 1963, 72 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837. In *Townsend,* the Supreme Court enunciated the standards governing habeas corpus hearings:

> " * * * [W]here an applicant for a writ of habeas corpus alleges facts which if proved, would entitle him to relief, the federal court to which the application is made has the power to receive evidence and try the facts anew.

> " * * * [C]ertain cases may make exercise of that power mandatory. * * * [A] federal evidentiary hearing is required unless the state-court trier of fact has after a full hearing reliably found the relevant facts.

> "There cannot even be the semblance of a full and fair hearing unless the state court actually reached and decided the issues of fact tendered by the defendant." 372 U.S. at 312–314, 83 S.Ct. at 757, 9 L.Ed.2d at 785–786.

Here, Fortner was denied relief in the state collateral proceeding without any hearing. What was afforded him in district court fell far short of the plenary hearing required by the above-cited cases. The hearing below was summary and truncated, abortive and inconclusive.

A. The deposition of Fortner's trial counsel, which constituted the only evidence offered by the State of Georgia, was obtained in a completely unacceptable fashion violating the Federal Rules of Civil Procedure. Instead of serving the notice of taking the deposition on the attorney representing Fortner in the federal proceeding, as required by Rule 5(b), the State of Georgia served the notice on the incarcerated applicant himself. Notice was filed on May 10, 1965, and the deposition was taken the next day. Even if appellant had not been in prison and had had easy access to his counsel, he would have been presented with an impossible schedule because he could not have communicated with his counsel swiftly enough to gain opportunity to explore the deposition. Even those of us who are accustomed to

the jet age are astounded at this timetable, which precluded the cross-interrogatories provided for by Rule 31.[5] Exacting from the State of Georgia a full measure of devotion to Rule 5(b) is no more than rational and reasonable. The rule should be construed so that the notice provided by it is effective. The affidavit of the lawyer points to unexplored factual areas which could have been investigated and traversed if counsel had been given the opportunity to cross the interrogatories.

B. Fortner's petition alleges facts which, if true, would entitle him to relief. The sole evidence offered by the State of Georgia to rebut the allegations was the depositional equivocation of Fortner's trial counsel. For us the deposition raises more questions than it answers. The statement that "there were mean facts which I was never able to present to the jury because of circumstances beyond my control" contains within itself built-in doubt as to the defense presented on the issue of ineffective representation. That there existed "mean facts" of which counsel was aware and that these "facts" were never presented to the jury may have been excusable in the lawyer's mind because of circumstances beyond his control, but that does not make the grossly inadequate representation by counsel which might thereby have resulted constitutionally permissible.

Fortner's allegations of ineffective representation based on failure to call critical witnesses brings to mind the case of Jones v. Huff, 1945, 80 U.S.App. D.C. 254, 152 F.2d 14, where an applicant for writ of habeas corpus alleged that his attorney ineffectively assisted him by failing to call witnesses who would have established his innocence. The court, in holding that the applicant would be entitled to be released from custody if the allegations could be proved, said:

"The allegations are improbable, but if they be true, it seems clear that the petitioner did not have a trial as we understand that term. These were not mere mistakes of counsel or errors in the course of the trial. If true, they constituted a total failure to present the cause of the accused in any fundamental respect." Id. at 15.

Unquestionably, Mr. Jones's ambiguous and ambivalent statement concerning the "mean facts" he did not present should have been subjected to scrutiny by counsel in the habeas hearing below and made the subject of specific findings of fact and conclusions of law. It was not. The trial judge in his findings and conclusions did not discuss any allegations made by Fortner, and his refuge in the apologetic platitude of "trial tactics", without any findings concerning the lawyer's actual activities, cannot receive our sanction. The findings of the district court are merely conclusory and as such are insufficient to indicate the factual basis for its ultimate conclusion that these decisions not to present critical witnesses were in the nature of trial tactics. They do not meet head-on the contentions of the appellant and thus fail to meet the requirements of Rule 52 of the Federal Rules of Civil Procedure. See 5 Moore, Federal Practice § 52.06 (1966); Burns v. State of Alabama, 5 Cir. 1966, 360 F.2d 608.

5. Rule 31 Fed.R.Civ.P. provides as follows:

(a) Serving Interrogatories; Notice. A party desiring to take the deposition of any person upon written interrogatories shall serve them upon every other party with a notice stating the name and address of the person who is to answer them and the name or descriptive title and address of the officer before whom the deposition is to be taken. Within 10 days thereafter a party so served may serve cross interrogatories upon the party proposing to take the deposition. Within 5 days thereafter the latter may serve re-direct interrogatories upon a party who has served cross interrogatories. Within 3 days after being served with redirect interrogatories, a party may serve recross interrogatories upon the party proposing to take the deposition.

Fortner also raised the substantial constitutional question of denial of compulsory process, a right which has been applied in habeas corpus proceedings. MacKenna v. Ellis, 5 Cir. 1959, 263 F.2d 35. On this issue, however, the hearing was even more shallow. Again, the only evidence offered by the State was Mr. Jones's depositional denial that Fortner had been deprived of compulsory process, and the trial judge's findings of fact and conclusions of law are devoid of any reference to the issue except as mention is made of Fortner's allegations. Even with the record in such a doubtful state, no one below asked for production of the state trial transcript. Without such a transcript, a judgment on allegations of constitutional deprivation becomes almost impossible. Neither the district judge is clairvoyant nor are we. The Supreme Court in Townsend v. Sain, supra, instructs us: "Where the fundamental liberties of the person are claimed to have been infringed, we carefully scrutinize the state-court record. * * * The duty of the Federal District Court on habeas is no less exacting." 372 U.S. at 316, 83 S.Ct. at 759, 9 L.Ed.2d at 787. In order to have afforded the plenary hearing required in habeas corpus proceedings involving constitutional claims, the District Court should have required the production of the complete state court record. Townsend v. Sain, supra, Randel v. Beto, 5 Cir. 1965, 354 F.2d 496, Cordova v. Cox, 10 Cir. 1965, 351 F.2d 269. It did not.[6]

In sum, we have a record of self-proclaiming but unanswered questions, with no questing by either the trial court or counsel for answers. When the deposition's built-in doubts arose, the State did nothing to resolve them. The record reveals no effort by anyone to confront or grapple with the petitioner's allegations of constitutional deprivation. Trial counsel must at least attempt to dig and explore for the truth in order to replace doubts with certainty or at least with logical plausibility. While Fortner's claims may be specious or spurious, they are nonetheless matters to be found and not divined. Bland conclusions—or none at all—are not sufficient. Specifics are not answered by conclusory generalizations.

In vacating the lower court's order denying Fortner's application for writ of habeas corpus, we do not prejudge the merit of his allegations. We decide only that the district judge was obliged to hold a plenary hearing and specifically to grapple with Fortner's allegations of constitutional deprivation. We cannot stand silently by and watch an application for a writ of habeas corpus be subordinated to mere ritual or rite, with denial a matter of rote.

Reversed and remanded.

---

6. During oral argument, this Court requested a transcript of the record in the state trial court. The State of Georgia, though under no complusion to do so, furnished us a copy. In view of our disposition of this case and the animadversions of counsel for appellant urging our non-use of it, we have denied ourselves access thereto on the assumption that the trial court on remand will be furnished with our copy now reposing in the Clerk's office. We defer ruling on whether Rule 75, Fed.R.Civ.P. precludes our taking the first look thereat, since the findings of the Court show that he did not engage in the exploration and ferreting of that record which this case demanded.