James D. HODGSON, Secretary of Labor,
United States Department of Labor,
Plaintiff-Appellee,

v.

BROOKHAVEN GENERAL HOSPITAL,
Defendant-Appellant.

No. 29083.

United States Court of Appeals,
Fifth Circuit.

Dec. 30, 1970.

M. Clifton Maxwell, Dallas, Tex., for defendant-appellant.

C. Dean Davis, Gen. Counsel, Texas Hospital Assn., Westgate, Austin, Tex., for amicus curiae.

William E. Everheart, Betty-Jo Christian, Attys., Dept. of Labor, Dallas, Tex., L. H. Silberman, Sol. of Labor, Bessie Margolin, Carin Ann Clauss, Attys., U. S. Dept. of Labor, Washington, D. C., Major J. Parmenter, Regional Sol., for plaintiff-appellee.

Before COLEMAN, AINSWORTH and GODBOLD, Circuit Judges.

AINSWORTH, Circuit Judge:

Proceeding under the authority conferred on him by 29 U.S.C. §§ 206(d) (3) and 217, the Secretary of Labor brought this action to enjoin the defendant Brookhaven General Hospital from violating the provisions of the Equal

Pay Act of 1963, 29 U.S.C. § 206. The District Court made findings of fact and conclusions of law, holding that the hospital's male orderlies and female nurse's aides performed substantially equal work, and that defendant paid its aides at lower wage rates which had not been shown to have been based on any factor other than sex. 29 U.S.C. § 206(d) (1). Defendant hospital was enjoined from future violation of the Equal Pay Act, and from the withholding of unpaid wages due female employees since February 1, 1967, "so that the wages of female employees will be equal to those of males employed by Defendant during the same pay scale period." See 29 U.S.C. §§ 206(d) (3) and 217.

The appellant hospital contends, among other things, that (1) the judgment is undermined by defects in the complaint; (2) the Secretary of Labor failed to sustain the burden of proving that the aides and orderlies were doing "equal work" within the meaning of 29 U.S.C. § 206(d) (1); and (3) evidence introduced by the defendant and other evidence which it was prevented from introducing establishes that the pay disparities in question were attributable to factors other than sex. Because the Trial Judge's findings do not clearly indicate a factual basis for her ultimate conclusions, we vacate the judgment and remand for further proceedings. See Kelley v. Everglades Drainage Dist., 319 U.S. 415, 63 S.Ct. 1141, 87 L.Ed. 1485 (1943). This case may set an important precedent for hospitals, and, accordingly, we have analyzed the issues in some detail.

## I. Background

Brookhaven General Hospital is a privately owned hospital located in Dallas County, Texas. It is situated on one floor, with a basement for heating, air conditioning and electrical equipment. It has two operating rooms, a laboratory (leased out), a pharmacy, an emergency room, a Central Supply room, a nursery, an E.K.G. room, a recovery room, two surgery suites, physiotherapy facilities, a coronary care unit, and two nurses' stations—North and South—joined by a corridor.

It has been the consistent practice of the hospital to hire men as "orderlies" and women as "nurse's aides." As the Trial Judge noted in her findings of fact:

The primary [though not the sole] work performed by both aides and orderlies consists of (1) caring for the personal needs of patients, such as serving food and beverages, assisting with baths, oral hygiene, skin care, perineal care, (2) assisting patients with mechanics such as ambulations, turning, wheel chairs, bed pans, coughing, and deep breathing. Aides and orderlies are both responsible for observing and reporting intake and output of patients, dietary intake and preference, proper body elimination, attitude towards nursing care, change in patient's condition. Both are responsible for giving enemas, performing surgical preps and perilights, and seeing that all equipment used is cleaned and properly maintained.

Finding 5 (bracketed insert ours). Aides and orderlies work three shifts: 7 a. m. to 3 p. m. (day shift), 3 p. m. to 11 p. m. (evening shift), and 11 p. m. to 7 a. m. (night shift). A shift differential is paid for work on the evening and night shifts. There are at least two aides and one orderly on each station on each shift, except that often neither station is manned by an orderly at night.

The hospital's Director of Nursing Services, a registered nurse with some years of experience in health education and the management of health institutions, is principally responsible for the hiring of aides and orderlies. She also has the bulk of administrative responsibility for reviewing the work of individual aides and orderlies and fixing their compensation. During the period under review, beginning in February of 1967, both starting salaries and the salaries paid to experienced personnel were raised at least once each year.

The complaint in this action was filed on the Secretary's behalf on March 24, 1969. Defendant answered denying the central allegations of the complaint and pleading in addition certain affirmative defenses provided for in 29 U.S.C. § 206(d). The case went to trial under a pretrial order which provided, among other things, that each party would be limited to a maximum of six aide and/or orderly witnesses, and that only wages allegedly accruing to aides from March 24, 1967, were at issue in the suit.

Section 206(d) (1) of 29 U.S.C. provides as follows:

> No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex: *Provided*, That an employer who is paying a wage rate differential in violation of this subsection shall not, in order to comply with the provisions of this subsection, reduce the wage rate of any employee.

■ Plaintiff bears the burden of proving equality of work and inequality of pay; if he sustains that burden, defendant has the burden of proving that the criterion for discrimination was some factor other than sex. See Shultz v. Wheaton Glass Company, 3 Cir., 1970, 421 F.2d 259, cert. denied, 398 U.S. 905, 90 S.Ct. 1696, 26 L.Ed.2d 64 (1970); Shultz v. First Victoria National Bank,

5 Cir., 1969, 420 F.2d 648. In the present case the Trial Judge found, in essence, that the Secretary had sustained his burden with respect to all or most of the aides on the hospital's rolls since March 24, 1967, and that the hospital had not established that its compensation system qualified under any statutory exception.

## II. The Complaint

■ Appellant contends that the complaint filed by the Secretary of Labor in this case is seriously defective, in that it fails to name the employees involved or to designate aides and orderlies as the classes of employees affected. We find no merit in this contention.

Section 206(d) (3) of 29 U.S.C. provides that in any action brought under the Equal Pay Act, "[f]or purposes of administration and enforcement, any amounts owing to any employee * * * shall be deemed to be unpaid minimum wages or unpaid overtime compensation * * *." under other pertinent provisions of the Fair Labor Standards Act. It is settled, at least in this Circuit, that an action instituted by the Secretary to recover unpaid minimum wages or overtime compensation need not specifically name the employees concerned or designate them by job classification. See Mitchell v. E-Z Way Towers, Inc., 5 Cir., 1959, 269 F.2d 126. The discovery procedures which are available to narrow the focus of such an action, see *id.*, were utilized for that purpose in this case. The pretrial order entered by the Trial Court confined the oral testimony to that of aides and orderlies, and we construe the judgment to be so limited.

## III. Equal Pay, Equal Work, and the Statutory Exceptions

The Trial Judge found in effect that during most of the months in question, orderlies were hired at salaries higher than the salaries at which aides were hired, and that where an experienced aide and an experienced orderly had virtually equal seniority, the orderly was

paid more than the aide. There is evidence in the record to support this finding.[1]

■ Brookhaven concedes that the duties which occupied the better part of the time of both groups of employees demanded equal skill, effort and responsibility. Each orderly and aide was primarily responsible for routine care of the patients assigned to him,[2] and for the most part the employees on duty at any time were assigned approximately the same number of patients. Though some differences may have existed in working conditions, we think the Judge was correct in minimizing them.[3]

Brookhaven contends, however, that the two roles were and are substantially distinguishable in terms of the "secondary and tertiary" duties the respective groups were called on to perform. First, it contends, orderlies were frequently called on to perform general hospital duties which aides were rarely called on to perform—duties requiring more than routine skill (catheterizations), effort (lifting heavy patients, bringing in stretcher patients, setting up traction, helping in the application of heavy casts, subduing violent patients, holding patients down in uncomfortable positions during spinal taps, moving TV sets and other heavy equipment, assisting in the emergency room, bringing up supplies), and responsibility (maintaining hospital security and preparing to assume leadership in the event of a fire). Second, it contends, orderlies were called on to perform duties for male patients assigned to aides which involved no special skill, effort, or responsibility, but which the patients simply preferred to have orderlies do. Among these tasks were bathing of the midsection, giving enemas, and preparing patients for abdominal surgery. Generally at Brookhaven the ratio of male patients to orderlies exceeded the ratio of female patients to aides. Thus, while orderlies were seldom assigned to female patients, aides were frequently assigned to male patients. By and large, the hospital contends, aides performed the more intimate services for their patients only; orderlies performed these services for their patients *and* patients assigned for other purposes to aides.

■ In evaluating these contentions, the Trial Judge was faced with several problems. In the first place, the testimony of the two aides summoned as witnesses by the Secretary and the two summoned by the hospital, if credited,

---

1. Appellant points out that the record also indicates that in some months certain aides were paid more than certain orderlies. Such isolated instances, while they do not invalidate the Trial Judge's basic finding, may be relevant in determining the entitlements of individual aides for given months, should final judgment be entered against the hospital. The order of the Trial Judge fixing amounts to be paid to aides in satisfaction of the original judgment is not before us for review.

   Appellant further contends that had the Trial Judge taken proper account of the fact that in many cases orderlies were hired as part-time or temporary employees, and hence did not receive the raises and fringe benefits regularly afforded to aides, she would have found that the two groups received equal pay. This contention is without merit. The salary comparisons made by the Trial Judge and reviewed here are based on the gross salary figures furnished by the hospital for each employee—figures which may be assumed to reflect all raises paid and in some cases obviously reflect the hospital's own valuation of fringe benefits. We note also that it is far from clear that standard types of fringe benefits are eligible for inclusion in "equal pay" determinations. See 29 C.F.R. § 800.113 (1970).

2. Discrimination on the basis of sex must sometimes be justifiable when one writes in a language containing no neuter personal pronoun.

3. Under the Act, where pay is unequal, no dissimilarity in working conditions is relevant unless it somehow explains the pay differential. In this case there was evidence that work on North Station was more unpleasant than work on South. There was no evidence, however, that orderlies or aides assigned to North Station were regularly paid more than their counterparts on South.

established that some aides over the course of their service were called on to perform a wider variety of duties than others. The testimony of the orderly who testified for the plaintiff and the two who testified for the defendant indicated a similar disparity.[4]

Appellant seizes on this point, and insists that the sample of three orderlies and four aide witnesses was too small to serve as the basis for a reasoned judgment as to whether the two groups as groups performed equal work. The Trial Judge, it contends, should have placed greater reliance on the job descriptions and manuals prepared by the hospital for the two groups and admitted into evidence over the plaintiff's objections. If, instead, the Trial Judge chose to rely on the testimony of a small group of aides and orderlies, only the rights of those who testified could be justifiably affected by the decree.

As to the job descriptions, the Trial Judge was clearly correct to place her reliance elsewhere. The controlling factor under the Equal Pay Act is job content—the actual duties that the respective employees are called upon to perform. Job descriptions prepared by the employer may or may not fairly describe job content. Cf. 29 C.F.R. § 800.121 (1970). In this instance the testimony established that some aides did more than the job description indicated. In such a situation the focus inevitably shifts to testimony respecting individual employees.

■ Brookhaven next argues that its motion for a directed verdict should have been granted at the close of the plaintiff's case. The Federal Rules of Civil Procedure do not authorize a motion for directed verdict in a nonjury case. Hunter-Wilson Distilling Co. v..

Foust Distilling Co., 3 Cir., 1950, 181 F. 2d 543; Morris v. Prefabrication Engineering Co., 5 Cir., 1947, 160 F.2d 779, 782 (dictum); see Fed.R.Civ.P. Rule 50; 2B Barron & Holtzoff, Federal Practice and Procedure ¶ 1072 at 365 (Rules Ed. 1961). The proper motion under the circumstances would have been a motion to dismiss the action under Rule 41(b). Had the Trial Judge so construed the motion, and applied the "substantial evidence" test, Benton v. Blair, 5 Cir., 1955, 228 F.2d 55, we think she would have been justified in ruling against the defendant. It is true that, while the plaintiff had succeeded in showing that two experienced aides had performed a greater variety of tasks than one orderly had performed in the two months he was employed, it had failed to demonstrate that these employees were typical of their respective groups. Under the circumstances, however, had defendant offered no testimony in rebuttal, the inference would have been warranted that plaintiff's witnesses were in fact representative of their classes.

■ At the close of the testimony, the Trial Judge had before her evidence which, if credited, indicated that even the least experienced aides and orderlies were called on from time to time to perform duties beyond the ambit of routine patient care. She had to determine whether those duties were distributed evenly among all aides and all orderlies so as to warrant comparison of aides and orderlies as classes; and if so, whether as a class the work of the aides was substantially equal to that of the orderlies in terms of skill, effort, and responsibility.

Focusing simply on the individual tasks performed over and above routine patient care, it seems clear that the

---

4. Thus, while all aides testified that they had been called from time to time to assist in the hospital's emergency room, only two had helped in setting up traction, and only one testified that she had helped in taking an electrocardiogram. All orderlies testified that they had set up traction, moved heavy television sets from one room to another, and performed male catheterizations; but only two testified that they had assisted in the emergency room or assumed any responsibility for fire protection, and only one recalled having assisted a doctor in applying a cast.

Trial Judge was justified in finding in effect that those tasks performed only by aides require as much skill as the most skilled tasks performed by orderlies, and that the additional duties assigned to both groups involved substantially equal responsibility. The validity of the judgment thus depends on the application of the "equal effort" criterion.

■■ The equal effort criterion has received substantial play in the reported cases to date. As the doctrine is emerging, jobs do not entail equal effort, even though they entail most of the same routine duties, if the more highly paid job involves additional tasks which (1) require extra effort, (2) consume a significant amount of the time of all those whose pay differentials are to be justified in terms of them, and (3) are of an economic value commensurate with the pay differential.[5] We are persuaded that this approach to the application of the statutory "equal effort" criterion is in keeping with the fundamental purposes of the Equal Pay Act, and adopt it here. Employers may not be permitted to frustrate the purposes of the Act by calling for extra effort only occasionally, or only from one or two male employees, or by paying males substantially more than females for the performance of tasks which command a low rate of pay when performed full time by other personnel in the same establishment.

■ The problem here is that the Trial Judge's findings of fact are not sufficiently thorough and specific to permit us to ascertain whether this test for equality of effort was satisfied in this case. In order to understand the problem it is necessary to examine the hospital's contentions fairly closely.

Aides and orderlies are assigned to a set group of individual patients, each of whom exerts a specific claim on their time and attention. When the male operator of a container-making machine downs tools to move supplies, his machine stands idle, while his female counterpart continues to operate hers. Cf. Shultz v. American Can Company—Dixie Products, 8 Cir., 1970, 424 F.2d 356. Here, the hospital contends, the situation is significantly different. Aides and orderlies care for approximately the same number of patients. In general, when an aide or an orderly is called away on an outside assignment, the same patient duties await him on his return. Because orderlies are called away far more frequently than aides, the hospital maintains, the typical orderly is required to compress into 75 per cent of his working time the routine patient duties which occupy something like 98 per cent of the working time of the typical aide. Brookhaven does not concede, and the Trial Judge did not clearly find, that routine patient duties are as exacting in terms of skill, effort, and responsibility as the outside duties. It contends, however, that in any event orderlies are called on to do a significantly greater volume of work.

The findings of the District Court fail to meet these contentions head on.[6] Cf.

5. See Shultz v. American Can Company, 8 Cir., 1970, 424 F.2d 356; Shultz v. Wheaton Glass Company, 3 Cir., 1970, 421 F.2d 259, cert. denied, 398 U.S. 905, 90 S.Ct. 1696, 26 L.Ed.2d 64 (1970); see also Wirtz v. Rainbo Baking Company of Lexington, E.D.Ky., 1967, 303 F.Supp. 1049; Wirtz v. Meade Mfg. Inc., D.Kan., 1968, 285 F.Supp. 812. Compare the following three decisions, in which federal district courts have held for the defendant on the equal-effort issue: Wirtz v. Kentucky Baptist Hospital, W.D.Ky., 1969, 62 Lab.Cas. ¶ 32,296; Wirtz v. Koller Craft Plastic Products, Inc., E.D.Mo.,

1968, 296 F.Supp. 1195; Wirtz v. Dennison Manufacturing Company, D.Mass., 1967, 265 F.Supp. 787.

6. The pertinent findings on equal effort are as follows:

7. Both aides and orderlies * * * may be assigned patients of the opposite sex. There are more aides than orderlies and when there is no orderly on duty the aides perform the more intimate services for male patients.

* * * * *

9. Only an insignificant portion of an orderly's time is spent in performing catheterizations.

Fortner v. Balkcom, 5 Cir., 1967, 380 F. 2d 816, 821. The Trial Judge made no findings with respect to the actual time orderlies and aides consumed in performing all duties other than routine care for their own patients. There was uncontradicted testimony, corroborated to some extent by the testimony of individual orderlies and aides, to the effect that the general practice of the hospital was (1) to substitute orderlies for aides in the performance of intimate services for patients of the employee's own sex, rather than the reverse; and (2) to assign orderlies first to heavy work and work involving physical risk, calling on aides for this work only when orderlies were unavailable.[7] Under the statute and the circumstances of the case, the existence of such practices is a material issue. There are no specific findings of fact to indicate how the Trial Judge resolved this issue. Her summary finding, Finding 18, is "but the most general [conclusion] of ultimate fact. It is impossible to tell from [it] * * * whether proper statutory standards were observed." Schneiderman v. United States, 320 U.S. 118, 129–130, 63 S.Ct. 1333, 1338–1339, 87 L.Ed. 1796 (1943).

Where "a full understanding of the question presented" may be had without specific findings, no remand is necessary. Janzen v. Goos, 8 Cir., 1962, 302 F.2d 421. This is not such a case. It is not the function of an appellate court in a nonjury case to supplement the Trial Judge's findings with its own. Kelley v. Everglades Drainage Dist., 319 U.S. 415, 421–422, 63 S.Ct. 1141, 1145, 87 L.Ed. 1485 (1943); S. S. Silberblatt, Inc. v. United States, 5 Cir., 1965, 353 F.2d 545, 550. Under these circumstances, we remand for further findings.

■ The appellant contends, finally, that any instances in which orderlies were paid more than aides for substantially equal work can be accounted for under one of the statutory exceptions (29 U.S.C. § 206(d) (1)) for pay differentials attributable to factors other than sex. Clearly the fact that the employer's bargaining power is greater with respect to women than with respect to men is not the kind of factor Congress had in mind. Thus it will not do for the hospital to press the point that it paid orderlies more because it could not get them for less.

■ At trial the hospital objected to the exclusion of testimony by the Director of Nursing Services as to the qualifications, potential, and value of each aide and orderly as she perceived them. As to qualifications at the time of hiring, the hospital failed to demonstrate the relevance of such factors as formal education to the duties the employees were called on to perform. As to relative merit, however, the Act specifically provides that unequal pay for equal work is justified if administered pursuant to a "merit system." This statutory exception, if not strictly construed against the employer, could easily "swallow the rule." Cf. Shultz v. First Victoria National Bank, 5 Cir., 1969, 420 F.2d 648, 657. The employer must show that its "merit system" is administered, if not formally, at least systematically and objectively. Cf. 29 C.F.R. § 800.144 (1970). The merit-system issue is so closely related to the equal-effort issue as to warrant the taking of additional evidence on the point if the hospital has anything better to offer than highly subjective evaluations of employee merit by hospital officials.

---

*    *    *    *    *

11. The primary duties of aides and orderlies are identical, the difference in duties resulting almost entirely from the different physiological needs of the two sexes.

*    *    *    *    *

18. There is no credible evidence that reveals an objective standard upon which wage disparities at Defendant Hospital between aides and orderlies are based.

7. One of the plaintiff's experienced aide witnesses testified that she had sustained a back injury as a result of an attempt to lift a particularly heavy patient.

## IV. Title VII

Finally, appellee directs our attention to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. Section 2000e–2(a) (2) declares it to be an unlawful employment practice for an employer "to limit, segregate, or classify, his employees in any way which would deprive or tend to deprive any individual of employment opportunities * * * because of such individual's * * * sex * * *." It is apparent that the purposes of this section and the Equal Pay Act are interrelated, and that the two provisions must in some way be "harmonized." See generally Kanowitz, Sex-Based Discrimination in American Law III: Title VII of the 1964 Civil Rights Act and the Equal Pay Act of 1963, 20 Hastings L.Rev. 305 (1968). At least one federal court of appeals has suggested that equal pay should be required for a "male" job and a "female" job which are in fact unequal if the reservation of the higher paid job to males would be impermissible under Title VII. See Shultz v. Wheaton Glass Company, 3 Cir., 1970, 421 F.2d 259, 266, cert. denied, 398 U.S. 905, 90 S.Ct. 1696, 26 L.Ed.2d 64 (1970). We think that the present case illustrates very well the problems in such an approach.

The kind of "customer preference" reflected in the hospital's assignment of orderlies to perform certain services for male patients otherwise assigned to aides is cognizable under Title VII. See Diaz v. Pan American World Airways, S.D.Fla., 1970, 311 F.Supp. 559. But it is apparent that these duties do not account for a major proportion of the orderlies' work over and above routine patient care for the patients assigned directly to them. Nor is this a case such as Shultz v. Kentucky Baptist Hospital, W.D.Ky., 1969, 62 CCH Lab.Cas. ¶ 32,296, in which the duties which distinguished the orderly's job from the aide's quite evidently demanded unusual physical strength.

In Weeks v. Southern Bell Telephone & Telegraph Company, 5 Cir., 1969, 408 F.2d 228, this Court held that an employer violated 42 U.S.C. § 2000e–2 when it foreclosed to women a job involving substantial physical effort on the assumption that few or no women possessed the necessary physical qualifications. If we were to adopt the approach of the Third Circuit in *Wheaton Glass*, supra, the *Weeks* analysis might be used here to sustain the Secretary of Labor's claim on behalf of the aides under the Equal Pay Act. We reject that approach because we believe it is destined to yield unfair results. "[O]n many jobs in which men are being paid higher wages than women because greater physical effort is apparently required, most women have not wanted or sought an opportunity to be so employed." Kanowitz, supra, at 354, citing Wirtz v. Dennison Manufacturing Company, D.Mass., 1967, 265 F.Supp. 787 (1967). The purposes of the Equal Pay Act and Title VII of the Civil Rights Act of 1964 are not well served by confounding the respective proofs required of plaintiffs.

The judgment of the lower court is reversed, and the cause remanded for (1) supplemental and specific findings of fact on the questions whether the jobs of orderly and aide at Brookhaven General Hospital demand equal effort and whether pay differentials are justified in terms of the exceptions enumerated in 29 U.S.C. § 206(d); and (2) the taking of further testimony on these issues, if either party or the court requests it. Pennsylvania Life Ins. Co. v. Commercial Trav. L. & A. Ins. Co., 5 Cir., 1961, 290 F.2d 226; cf. United States v. Trout, 5 Cir., 1967, 386 F.2d 216.

Reversed and remanded.