Peter J. BRENNAN, Secretary of Labor,
United States Department of
Labor, Plaintiff,

v.

INGLEWOOD, INC., a corporation (Origi-
nally designated as Inglewood Manor,
a corporation), Defendant.

Civ. A. No. 73J–284(N).

United States District Court,
S. D. Mississippi,
Jackson Division.

June 12, 1975.

Murray A. Battles, U. S. Dept. of Labor,
Cullman, Ala., for plaintiff.

Joe Jack Hurst, Jackson, Miss., for de-
fendant.

FINDINGS OF FACT AND
CONCLUSIONS OF LAW

NIXON, District Judge.

The Secretary of Labor brought this ac-
tion under Section 17 of the Fair Labor

Standards Act of 1938, as amended, 29 U.S. C.A. § 217 (1970), to enjoin the defendant nursing home's alleged violations of the Act's equal pay provisions. Equal Pay Act of 1963, 29 U.S.C.A. § 206(d)(1) (1970). These alleged violations affect female nurse's aides and unit assistants on the one hand, and male orderlies on the other, who were paid unequal wages for the performance of what the Labor Department contends was substantially equal work.

The plaintiff charges that the defendant employs nurse's aides and unit assistants at wages less than it pays orderlies in spite of the fact that they all perform jobs which require equal skill, effort and responsibility under similar working conditions. On the other hand, the defendant contends that the duties of nurse's aides and unit assistants are not equal to the duties of orderlies within the meaning of the Act, and each classification requires different skills, effort and responsibilities.

Based upon all the evidence elicited at the trial of this case, this Court makes the following Findings of Fact and reaches the following Conclusions of Law.

### FINDINGS OF FACT

The defendant operates a 100-bed skilled nursing home called Inglewood Manor in Jackson, Mississippi, wherein it furnishes physical facilities and personal care for the aged and infirm. Inglewood Manor is divided into two separate operating units, each containing 50 beds and a shared dining hall, a reception and recreation room and an office area. The "home" has been filled to capacity since 1970 or 1971, with a long waiting list of patients, is licensed by the State Board of Health, and is the only privately owned nursing home in the State of Mississippi which is accredited by the Joint Commission on Hospitals and Nursing Homes. Approximately eighty percent of its patients are female and twenty percent are male.

Mrs. Margaret Clinton is the defendant's Administrator and Mrs. Madeline Nicholas is Director of Nursing. Inglewood customarily employs four registered nurses, nine full-time and two relief licensed practical nurses, twenty-seven nurse's aides, four unit assistants, and four full-time and two part-time orderlies. Additionally, there is one janitor who works only the morning shift from 7:00 a. m. to 3:00 p. m., and since 1968 or 1969 the home has not employed any maintenance man, but, as will be more fully discussed herein, all maintenance work since then has been performed by orderlies.

The job descriptions of nurse's aides, unit assistants and orderlies are set forth in Exhibit P-1 and this Court will not enumerate them but incorporates them herein by reference. The pay rates of all employees in the three categories in question hired by the defendant since 1967, including the period of time in question herein, i. e., December, 1970 to December, 1972, are reflected in Exhibit P-3. This Exhibit and the testimony establish that all nurse's aides are paid the applicable minimum wage, regardless of experience, length of service with the defendant or merit increases, and all four unit assistants are paid an additional ten cents per hour or $2.10. One of the orderlies is paid $2.30 an hour, another $2.20 an hour, two are paid $2.10 an hour, and the remaining two who were recently hired are paid the applicable minimum wage of $2.00.

The classification "unit assistant" is a job to which nurse's aides are promoted after six months experience as aides if they have demonstrated their ability to follow instructions and perform their work well. Unit assistants are given additional responsibilities, working closely with the nurses and, in addition to performing the normal duties of nurse's aides, they also tube-feed, administer medication, examine for fecal impactions and irrigate catheters.

Each time that aides' salaries have been increased because of increases in the minimum wage, orderlies' and unit assistants' wages have been correspondingly increased.

In addition to rendering the personal care to patients which is required of nurse's aides and unit assistants, the orderlies at Inglewood Manor during the period in ques-

tion had the following responsibilities and performed the following duties which were not required of and not performed by aides and unit assistants, all of which will be discussed in more detail: (1) catheterization of male patients, a skilled and important nursing function which aides and unit assistants are specifically prohibited from performing and which is performed on female patients only by nurses; (2) moving of heavy oxygen tanks from the storage area outside the home to the various rooms, setting them up, and removing the empty tanks; (3) lifting and transporting beds, including heavy electric beds, to and from the various rooms, and lifting all male patients and several of the heavier female patients; (4) setting up and operating special equipment, including trapeze bars, for paraplegic and quadraplegic patients; (5) performing security work, including the return of patients who had either purposely left or wandered away from the nursing home and restraining violent or unruly patients; (6) performance of all maintenance work at the nursing home; and (7) mopping and waxing of floors, sometimes assisted by the janitor who worked on the morning shift.

In addition to performing the foregoing functions, the orderlies at Inglewood Manor are required to "float" or work on both units of the nursing home, male patients being approximately equally distributed between the two units, whereas aides and unit assistants are not required to "float" but only to work in either Unit A or Unit B. Although two orderlies work the morning shift from 7:00 a. m. to 3:00 p. m., with each primarily responsible for one of the two units, they nevertheless are required to work both units, and on the afternoon (3:00 p. m. to 11:00 p. m.) and night (11:00 p. m. to 7:00 a. m.) shifts, only one orderly is on duty in the home.

Orderlies at Inglewood Manor are regularly trained by doctors, nurses, or manufacturer's representatives in the use of the Foley catheter and must be qualified to the satisfaction of the Director of Nursing before they are permitted to catheterize male patients. Catheterization is a very important function at a nursing home and requires skill, knowledge and training because of the danger involved. As previously stated, orderlies perform all of the catheterization of male patients and nurses perform them on female patients. Although one unit assistant testified that she had catheterized a female patient, she admitted that she knew this was against written instructions and contrary to the rules of Inglewood and she was reprimanded for doing so and instructed not to perform another catheterization. Catheterization is very frequently performed at Inglewood, and although one orderly testified that he had not catheterized any patients, he nevertheless admitted that he was experienced and trained to do so and would have done so if required during the short term that he had worked for the defendant on the night shift.

Orderlies are regularly and frequently called on to set up oxygen tanks. This requires individual orderlies to move the tanks, each of which weighs 165 to 180 pounds when full, onto a cart or dolly and haul them from a storage area outside the building where they are kept for safety reasons, into the building, down the hall and to the individual rooms. Extreme care is required in this moving process because of the danger of explosion. The orderlies then "pop" the tanks to verify that they are full of oxygen and to clear the valves of debris, unscrew the tank caps with a wrench and attach gauges and connecting devices to the patient. After the oxygen supply is exhausted, the orderly disconnects the empty tanks and removes them from the building.

Additionally, orderlies are frequently called on to lift many elderly and infirm men and women in and out of bed and exclusively care for the male paraplegic and quadraplegic patients who must be lifted every day. In addition, they must lift any heavy female patients, including one presently at Inglewood who weighs in excess of 300 pounds. Orderlies must also regularly lift beds with patients therein in order to

place "shock blocks" under the bed to elevate a certain part of the patient's body.

Orderlies frequently move supplies and heavy equipment, including electric beds from the basement and attic, carry luggage and any personal belongings, including television sets of patients who are admitted to or discharged from the nursing home, which is not done by aides and unit assistants.

When patients become unruly or violent, orderlies are called upon to restrain them, in addition to returning patients who have wandered off from the building or tried to leave. They also perform around the clock security duty at Inglewood.

In addition to performing the foregoing work, orderlies at Inglewood Manor perform all of the maintenance work, which is one of the hardest jobs and biggest problems at Inglewood. In 1969, Inglewood hired a full-time maintenance man and paid him $3.00 an hour at a time when the minimum wage was $1.30, but he was discharged shortly thereafter because he only worked one shift and maintenance is required around the clock, including weekends. This maintenance work, which is substantial and of great economic benefit to the defendant, includes (1) most, if not all of the electric and plumbing work whenever the need arises, subjecting orderlies to call in an emergency while off duty. This includes regular checks of the emergency electric lights, fire alarm systems, smoke doors and fire-fighting equipment at Inglewood, as well as being in charge of fire drills; (2) waxing and polishing floors and cleaning and painting patients' rooms that become vacant; (3) cleaning grease traps and replacing or unstopping commodes; (4) cleaning and lubricating all wheel chairs; (5) performing carpentry work, including on one occasion patching of the roof, and the removing and adjusting of doors and installation of cabinets; (6) installing washing machines, including the necessary electrical and plumbing work; and (7) repairing and changing approximately 85 individual air conditioning cooling and heating units, as well as repair and maintenance of 4 central

units. These window units, which weigh approximately 125 pounds each, are regularly removed and replaced when they malfunction.

## CONCLUSIONS OF LAW

■ This Court has jurisdiction of the parties and of the subject matter. The Secretary of Labor had the burden of proving equality of work. *Hodgson v. Golden Isles Convalescent Homes, Inc.,* 468 .F.2d 1256 (5th Cir. 1972); *Hodgson v. Brookhaven General Hospital,* 436 F.2d 719 (5th Cir. 1970). The legislative history of the Equal Pay Act underscores the necessity of a case by case analysis, that is, the issues must be decided on the facts of each case and not on an industry-wide basis, because all aides in all hospitals do not perform identical functions, nor do all orderlies in all hospitals perform identical functions. The differences or similarities of functions must determine the ultimate outcome under the Equal Pay Act.

■ As noted by the Court in *Golden Isles,* "[b]y substituting the term 'equal work' for 'comparable work,' which was originally suggested, Congress manifested its intent to narrow the applicability of the Act," making the polestar a substantial identity of job functions rather than comparable work or skill and responsibility. As the Court further noted, "Congress intended to permit employers wide discretion in evaluating work for pay purposes"—by debating examples "to illustrate that a wage differential can be justified for employees who are available to perform an important differentiating task even though they do not spend large amounts of time at the task." *Hodgson v. Golden Isles Convalescent Homes, Inc., supra,* at 1258.

As the Fifth Circuit pointed out in *Golden Isles,* a number of these type cases have been decided in favor of the plaintiff, and a number in favor of the defendants, depending upon the facts of each case. This Court concludes that the facts of the case sub judice militate more strongly against the Secretary than did those in *Golden Isles.*

The Secretary has failed to prove his case herein by a preponderance of the evidence, but on the contrary, the evidence preponderates in favor of the position of the defendant inasmuch as the work performed by the nurse's aides and unit assistants at Inglewood Manor is not equal with the work performed by the orderlies. The duties performed by the orderlies regularly require significantly more effort, different and additional responsibility, and their work is performed under different circumstances. The orderlies' duties require more effort, skill and responsibility and training than that of nurse's aides and unit assistants, and these additional duties and responsibilities are of substantial financial value to the defendant. The additional and unique duties of the orderlies at Inglewood Manor require extra effort, a significant amount of their time, and provide the nursing home an economic benefit commensurate with the pay differential. See *Hodgson v. Brookhaven General Hospital, supra,* at 725.

The Secretary has failed to meet his burden of establishing that the jobs in issue require equal skill, effort and responsibility under similar working conditions, and that the defendant paid nurse's aides and unit assistants different hourly rates than orderlies solely because of sex. Thus, he has failed to establish any violation by the defendant of the Fair Labor Standards Act. Therefore, the plaintiff is not entitled to any of the relief prayed for in his Complaint, and this suit shall be dismissed with prejudice, at the cost of the plaintiff.

A judgment conforming with the foregoing Findings of Fact and Conclusions of Law shall be presented to this Court by the attorney for the defendant within the time prescribed by the Rules.